UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Gregory F.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

19-CV-00481-LJV
DECISION & ORDER

---

On April 4, 2019, the plaintiff, Gregory F. ("Gregory"), brought this action under the Social Security Act.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket Item 1.  On February 24, 2020, Gregory moved for judgment on the pleadings, Docket Item 17; on April 24, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19; and on May 29, 2020, Gregory replied, Docket Item 22.

For the reasons stated below, this Court grants Gregory's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Gregory argues that the ALJ erred in two ways.  Docket Item 17-1.  First, he argues that the ALJ erred by failing to properly evaluate the opinion of Andrea Castonguay, P.A.-C., an orthopedic physician assistant ("PA"), before giving it "little weight." *Id.* at 17.  He also argues that the ALJ erred by failing to consider the impact of

2

a medically required cane under SSR 96-9P when crafting the residual functional capacity ("RFC") determination. *Id.* at 13.

This Court agrees that the ALJ erred and, because that error was to Gregory's prejudice, remands the matter to the Commissioner for proper consideration of PA Castonguay's opinion and the impact of Gregory's use of a cane.

I. **PA CASTONGUAY'S OPINION**

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted). And before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

Physician assistants are not considered "'acceptable medical sources' . . . whose medical opinions may be entitled to controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). They instead are deemed "other sources,"[3] whose opinions

---

[3] When Gregory F. filed his claim in October 2015, physician assistants were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment"; but "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, [they could] outweigh the opinion of an 'acceptable medical source[ ]' . . .," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006); *cf.* 20 C.F.R. § 416.902(a)(8) (2017) (expanding list of "acceptable medical sources" to include "licensed advanced physician assistant[s]"). The factors for considering opinion evidence included "[w]hether the source [had] a specialty or area of expertise related to the individual's impairment(s); and [a]ny other factors that tend to support or refute the opinion." Considering Opinions and Other Evidence from Sources

3

the ALJ is "free to discount . . . in favor of the objective findings of other medical doctors." *Id.* at 108-09. But the ALJ still must consider and explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).

In other words, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)). Moreover, the Code of Federal Regulations ("the Code"), 20 C.F.R. § 404.1527(c), enumerates six factors that the ALJ should consider in giving weight to the opinion of an "other source":

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

*See Tolliver v. Astrue*, No. 12-CV-042S, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (citations omitted) (summarizing the factors from the Code). Using those factors to articulate the ALJ's reasoning is more than just a good idea. In *Tolliver*, for example, the court remanded when the ALJ failed to use those factors to explain why he assigned

---

Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. at 45,595. Because PA Castonguay worked in a specialized orthopedic clinic and was working alongside an orthopedic physician, an ALJ reasonably could find that her opinions about orthopedic issues deserve significant weight.

4

little weight to an "other source" opinion of a nurse practitioner who saw the patient more frequently than did the treating physician.  *Id.*; *cf. Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (holding that remand is not mandated when, despite failing to go through the factors, "the ALJ provide[s] sufficient 'good reasons' for the weight assigned").

Here, the ALJ found that Gregory had the RFC "to perform the full range of sedentary work as defined in 20 CFR 416.967(a)."  Docket Item 7 at 23.  In reaching that conclusion, he "did not give any significant weight" to the opinion of PA Castonguay.  *Id.* at 25.  But his only explanation for discounting PA Castonguay's opinion was that it is "not supported by her examination findings or consistent with the rest of the treating source record or Dr. Dr. [*sic*] Miller's examination findings."[4]  *Id.*  That conclusory explanation is not sufficient.

Indeed, the ALJ failed to address most of the factors laid out in the Code—including and especially PA Castonguay's expertise in orthopedics—and his explanation lacked the necessary detail to form "an 'accurate and logical bridge' between the evidence and the conclusion."  *See Craft*, 539 F.3d at 673 (7th Cir. 2008) (quoting another source).  Stated another way, ALJ did not explain *how* PA Castonguay's

---

[4] The ALJ gave "some weight" to the opinion of the internal medicine consultative examiner, Donna Miller, D.O.  Docket Item 7 at 25.  Although he summarized other medical opinions in the record, the ALJ failed to explain what weight he afforded those opinions when determining Gregory's RFC.  *Id* at 24.  Without any explanation, it is not possible for this Court to determine why the ALJ discounted parts of PA Castonguay's opinion that were consistent with other medical opinions in the record indicating, for example, that Gregory needed to use a cane after surgery. *See, e.g.*, Docket Item 7 at 244.

5

opinion was inconsistent with her own examination, the medical record, or the results of Dr. Miller's examinations. Without that link, it is impossible for a reviewing court to "assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." See Craft, 539 F.3d at 673 (quoting another source).

And that was no small error here. Several of PA Castonguay's findings[5] are potentially at odds with the ability to perform the full range of sedentary work that the RFC contemplated. The Code defines sedentary work as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). But, for example, PA Castonguay found that Gregory needed a cane to walk and balance, see SSR 96-9P (noting that a claimant's use of a cane must be considered before determining whether the cane precludes the full range of sedentary work), and that he would need to lie down at unexpected intervals, cf. Docket Item 7 at 48 (testimony by the vocational expert that recliners would not be accommodated in any of the jobs identified). She also opined that he could stand and

---

[5] PA Castonguay found that Gregory could lift and carry less than ten pounds. Docket Item 7 at 387. She found that he could stand and walk no more than two hours in a normal day; similarly, she found that he could sit no more than two hours in a normal day. Id. at 387-88. She opined that Gregory would need to change positions every 10-15 minutes, that he would need to walk for 5 minutes each time, and that he would need to lie down at unexpected intervals. Id. at 388. She noted that Gregory needed a cane for balance and ambulation, that he could never climb ladders, that his ability to push or pull was limited, and that he could not be exposed to extreme cold. Id. at 389. Finally, PA Castonguay concluded that Gregory should never be exposed to hazards such as machinery or heights and that he would be absent from work more than three times a month. Id. at 390.

walk no more than two hours, and sit no more than two hours, during a normal day. *Id.* at 387-88. Those limitations might well have precluded the employment that the ALJ found possible.

During the administrative hearing, the ALJ expressed confusion about PA Castonguay's opinion.[6] *Id.* at 40 (expressing confusion about PA Castonguay's "medical source statement" and an absence of treatment records). To the extent that the ALJ had questions about PA Castonguay's opinion, or found it vague or unclear, the ALJ should have contacted PA Castonguay or otherwise developed the record before rejecting it. "The law is clear beyond cavil that where . . . a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion." *Heidrick v. Berryhill*, 312 F. Supp. 3d 371, 374 (W.D.N.Y. 2018) (quoting *Isernia v. Colvin*, 2015 WL 5567113 at *10 (E.D.N.Y. Sept. 22, 2015)). Although this rule deals with the opinions of treating physicians, courts in this circuit have held that "the same concerns that required remand [in those cases] (namely, the ALJ's fundamental duties to develop the record and make a decision based on substantial evidence) are present" when dealing with the opinion of a physician assistant. *Scott v. Berryhill*, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018) (further noting that "the Commissioner's regulations indicate that the ALJ may

---

[6] The hearing transcript suggests that the ALJ did not to appreciate the thoroughness of PA Castonguay's evaluation. Docket Item 7 at 42 ("ALJ: . . . it doesn't look like they [sic] did a thorough exam"). On the contrary, however, PA Castonguay collected a health history, made subjective findings based on a discussion with Gregory, made objective findings based on an examination, reviewed radiographic findings, sent Gregory for bloodwork to rule out an occult infection as the source of his pain, and discussed the proposed treatment plan with a physician at the clinic. Docket Item 7 at 391-92. That certainly appears to be thorough, at least to this Court.

7

recontact any 'medical source' where the evidence of record is incomplete or inconsistent, including where the evidence is 'ambiguous'").

In any event, the ALJ was obligated to explain why he "gave no significant weight" to PA Castonguay's opinion. His failure to do so was error. And that error alone requires remand.

## II. GREGORY'S USE OF A CANE

Gregory also argues that the ALJ erred in failing "to properly consider the use of a medically required cane under SSR 96-9P." Docket Item 17-1 at 1. For a cane to be medically necessary, "there must be medical documentation establishing the need for [the cane] to aid in walking or standing, and describing the circumstances for which it is needed." *See* SSR 96-9p, 1996 WL 374185, at *7. But if those factors are present, the ALJ must incorporate the claimant's use of the cane into the RFC. And when there is medical documentation about a cane in the record, an ALJ's failure to determine whether the cane is medically necessary or to incorporate the use of a cane into the RFC is legal error. *See, e.g.*, *Scott v. Berryhill*, 2018 WL 4442882, at *6 (W.D.N.Y. Sept. 17, 2018) (remanding because the ALJ failed to properly consider whether the plaintiff's cane was medically necessary and the plaintiff's cane use was not incorporated into the RFC).

Gregory testified at the hearing that he used a cane. *See* Docket Item 7 at 55 (answering "yes" to the question "[a]nd with the cane . . . do you have difficulty carrying things?"). Moreover, in addition to PA Castonguay's assessment, *see supra,* several other medical records addressed Gregory's use of a cane. For example, as the

Commissioner concedes, the post-surgical records of Matthew J. Landfried, M.D., an orthopedist who performed a total right hip arthroplasty on Gregory and who saw him after surgery, noted that Gregory used a cane.  Docket Item 19-1 at 23.  So did the records of the home healthcare nurses who visited Gregory after his surgery.  *See id.* at 229-337.  And those notes did more than simply observe that Gregory used a cane: they confirmed that he needed one.  *See, e.g.*, Docket Item 7 at 244 (Jessica Jones, D.P.T., noting that Gregory had "an antalgic gait with the cane," and that subsequent session would include continued "gait training with a straight cane"), 238 ("client instructed . . . [to] always use assistive device" by D.P.T. Jones).[7]

The ALJ referred only once to Gregory's use of a cane. *See id.* at 24-25 (acknowledging that in a 2015 post-surgical visit with Brian Stendts, RPA, Gregory "was ambulating with a cane in his right hand"); *see also id.* (noting that during a 2016 assessment with Dr. Miller, Gregory "used no assistive devices").  He neither used the medical records and opinions to evaluate whether Gregory needed a cane nor incorporated Gregory's use of a cane into the RFC.  And the failure to do one or the other was a second error.  *See, e.g.*, *Rowe v. Berryhill*, 2018 WL 4233702, at *4 (W.D.N.Y. Sept. 6, 2018) (remanding in part because the ALJ failed to properly consider whether the plaintiff's self-initiated use of a cane as a protective measure was medically necessary).

---

[7] The notes from this visit include, among other things, that Gregory engaged in physical therapy without an ambulation device, Docket Item 7 at 236, and that he was "gait trained . . . X80 feet without an assistive device," *id.* at 238.  But those limited observations—that Gregory was able to perform some therapy and to walk just 80 feet without a cane—do not conclusively address whether he might need to use a cane when walking or otherwise engaging in his day-to-day activities.

The Commissioner suggests that Gregory's cane was not medically necessary because "his most recent medical treatment records . . . did not document use of a cane" and because PA Castonguay's recent assessment that Gregory needed a cane was "based on subjective reports." Docket Item 19-1 at 23-24. Those reasons may well have supported a finding that Gregory's cane was not medically necessary. But they are missing from the ALJ's decision. It is a foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting another source) (noting that courts "may not accept . . . *post hoc* rationalizations for agency action"). So the Commissioner's belated attempt to salvage the RFC lacks merit.

What is more, although some of Gregory's more recent medical records do not document his use of a cane, none conclude that he no longer needed to use one. Dr. Miller's report suggested that Gregory may have stopped using a cane, *id.* at 219 (observing that Gregory "[u]sed no assistive devices" while completing her assessment), but she also noted that he "[d]eclined to walk on heels and toes" during her exam—presumably a more difficult task. Furthermore, Gregory visited PA Castonguay twice about a year *after* Dr. Miller's assessment, Docket Item 7 at 387-93, and during those more recent visits, PA Castonguay noted that Gregory needed a cane to walk and sometimes noted that he needed a cane for balance. *See id.* at 387-93.

The Commissioner also suggests that the use of a cane does not necessarily preclude "a range of sedentary (or even light) exertional work." Docket Item 19-1 at 25.

That also may be true. A cane might or might not preclude sedentary work, which "involves sitting" but in which "a certain amount of walking and standing is often necessary in carrying out job duties." 20 CFR 416.967(a). The error here was in not addressing whether use of a cane might preclude Gregory from doing the work that the RFC suggested he could. And the failure to decide whether Gregory needed a cane—or even to address that issue—therefore was not harmless error.[8]

In sum, because the ALJ did not make an explicit finding about Gregory's use of a cane, this Court cannot determine whether the ALJ failed to consider the evidence; or found that a cane was not medically necessary; or found that a cane was medically necessary but did not impact Gregory's RFC; or reached some other conclusion. That precludes meaningful judicial review. *See Craft*, 539 F.3d at 673 (quoting another source) (noting that one of the ALJ's duties is to "provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . 'a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review'"). And that, in turn, requires remand.

---

[8] The government argues that regardless of whether the ALJ properly considered Gregory's use of a cane, any error is harmless. *See* Docket Item 19-1 at 25-26. But the record seems to suggest that if Gregory needed a cane for balance, that would preclude him from doing any of the three jobs listed in the ALJ's determination. *See id.* at 50; *see also* SSR 96-9p, 1996 WL 374185, at *7 (explaining that "the occupational base for an individual who must use [a cane] for balance . . . may be significantly eroded"). In any event, and at the very least, the ALJ's failure to address the cane creates a gap in the record that must be filled. *See e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'").

On remand, the ALJ should determine whether Gregory's use of a cane is medically necessary.  If it is, the ALJ must incorporate the use of a cane into the RFC.[9]

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Gregory's motion for judgment on the pleadings, Docket Item 17, is GRANTED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: December 7, 2020
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[9] The Court does not reach the issue of substantial evidence because it "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").